## ERIE R. CO. v. COLLINS.

(Circuit Court of Appeals, Third Circuit. March 9, 1926.)

No. 3387.

Railroads ⬯279—Railroad hostler's failure to override signals of repair company's employee in stopping engine on turntable to give sufficient clearance held not negligence, causing death of workman on another engine.

Failure of hostler, railroad employee, who backed engine on turntable in charge of repair company, stopping at signal of repair company's employee, to override such signal and stop where there would be ample clearance between engine when rotated and another, *held*, as matter of law, not negligence making railroad company liable for death of repair company's employee, working on second engine and killed through want of sufficient clearance, as turntable was moved by repair company's employees.

Davis, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of New Jersey; Wm. N. Runyon, Judge.

Action by Margaret Collins, administratrix of the estate of Martin Collins, deceased, against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

Alexander Simpson, of Jersey City, N. J., for plaintiff in error.

Collins & Corbin, of Jersey City, N. J. (Edward A. Markley and Charles W. Broadhurst, both of Jersey City, N. J., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Margaret Collins, a citizen of New Jersey, as administratrix of Martin Collins, her husband, brought suit, recovered a verdict, and had judgment against Erie Railroad, a citizen of New York, for damages for the latter's alleged negligence in causing the death of her said husband. Thereupon the railroad took this writ, and the question before us is whether there was evidence of the railroad's negligence which warranted the

trial judge submitting that question to the jury.

The proofs show that by written contract the Wagner Construction Company leased from the Erie Railroad Company its terminal repair property, amongst which were the turntable, roundhouse, and tracks hereafter mentioned. Martin Collins, the decedent, had been, and was on March 11, 1922, the day of the accident, employed by that company as a valve machinist. On that day he had been working on repairs his company was making on engine No. 515, and he had under his directions a hostler of the Erie Company, who had the engine under steam and was ready to move and try the engine as Collins directed. In point of fact the engine had stood stationary on the track all day. It was Collins' right and duty, when thus repairing an engine, to place his flag upon it and thereby protect himself. This precaution he did not take. The track on which the engine stood was some 6 feet distant from a turntable, also controlled and operated by the Wagner Company. When the accident occurred, which was about half past 2 in the afternoon, Collins was working near the steam chest on the turntable side of the engine. He was enveloped by steam blowing from the engine, and evidently failed to see the near approach of engine No. 2908, which was slowly coming toward him on the turntable. All witnesses agree that there was a clearance between the engines of from 6 to 18 inches, but it was so small that Collins was caught between them and crushed to death. As to the engine on which the deceased was working, its control, its location on the track with reference to the turntable, the place in which Collins worked, all of these were matters that solely concerned him and his employer, the Wagner Company, and with which the Erie Railroad had no relation or control. It follows, therefore, that so far as leaving the engine on the track, or subjecting Collins to danger, the Erie Railroad had no possible connection, other than the ownership of the engine which the Wagner Company was repairing and controlling.

It is therefore clear that, if negligence on the railroad's part exists, it must lie in the railroad company's negligently moving the other engine and crushing the decedent. In that regard the proof is that the turntable, which was included in the leased premises, was under the exclusive control of the Wagner Company. Engine No. 2908, owned by the Erie Company was about to be repaired by the Wagner Company. The railroad's hostler, or engine man, Phoft, who was sit-

ting in its cab, backed it to the turntable. The engine's movements, both as to going on the turntable, its being stopped, and to its being turned on the turntable, and when it crushed Collins, were under the exclusive control of the Wagner Company. The signal to Phoft to back onto the turntable was given by Lyon, the Wagner man in charge of the table. When he was satisfied the engine was backed sufficiently far to balance its weight on the table, Lyon gave the signal to the hostler to stop, which the latter did, and later Lyon gave the signal to turn to another Wagner Company employee, Williams, who was in a cab attached to the turntable, and who controlled and operated the electric motive power. It will thus appear that the location of the engine on the table, the turn of the table towards Collins, and the catching of Collins between the two engines were things controlled and effected by the Wagner Company's workmen. The company's acts, namely, placing the engine on the repair tracks, assigning Collins a place to work, his failing to use a warning flag, locating the engine on the turntable with a meager clearance, determining to what outgoing track the table should be turned, and also determining in what direction the table should be turned, were all matters controlled and carried out by Wagner employees, and in the doing of which the railroad had no part.

It is, however, contended that, because Phoft, the hostler, did not override and change Lyons' stop of the engine, and avoid the overhang of the tender and drawhead, such omissions constituted negligence on the part of the railroad. We cannot agree with such a contention. If negligence at all, it was a remote and not a proximate cause of the injury, for the reason that in the train of events it was the first negligence. The later and the proximate negligence was that of Lyons in directing the movement of the turntable with a dangerous overhang. Moreover, in the practical operation of railroads, there must be distinctive spheres and limits of duty and control, in order to locate and secure individual responsibility. In bringing this engine to the Wagner Company's shops for repair, it is clear that the control of the engine must necessarily be under the control of that company. What other standard of duty could the hostler have than to obey orders, the correctness of which he had no reason to question? He was at his place on the cab of a complicated engine, and his duty was there, and while there to follow signals. He was near the head of an engine 70 feet in length. He stopped in response to the sig-

nal, and to impose on an engineer the further duty of seeing whether the signalman had made a proper stop would be impractical in practice and subversive of responsibility. The control of the stop was the duty of the turntable man; in operation, the hostler was not guilty of negligence in relying upon it. Having done so, the duty of the railroad employee was ended, and with it the railroad's agency in causing this unfortunate accident. From then on the causal, proximate, and effective acts which resulted finally in the accident were each and all the separate, individual, and unrelated acts of employees of the Wagner Company, and it was the duty of the court below to have assumed the responsibility of declining to submit to the jury the question of the railroad's negligence.

Obviously, the corporate responsibility, if such there was, for this accident, rested on the Wagner Company, and, as the proofs show that company had insurance protecting its workmen, reparation to that extent was no doubt made. Be that as it may, there is no ground for this railroad being held responsible for an accident which resulted from acts of either the decedent or his fellow employees, all of whom were Wagner Company workmen, and not from any act or omission of the defendant company.

The judgment below must, therefore, be reversed.

DAVIS, Circuit Judge, dissents.